## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DONNA WAGNER,               )
                                 )
           Plaintiff,       )
                                 )
      v.                   )          No. 4:13CV2466 JCH
                                 )
RJM ACQUISITIONS, LLC,     )
                                 )
           Defendant.    )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, filed December 18, 2014, and Defendant's Motion for Summary Judgment, filed December 19, 2014. (ECF Nos. 29, 31). The motions are fully briefed and ready for disposition.

## BACKGROUND

At some point in late 2011 or early 2012, Plaintiff Donna Wagner placed an order for skin care cosmetics with the Meaningful Beauty Company, paying in full with her credit card. (ECF No. 29-2, PP. 7-9). Meaningful Beauty then sent Plaintiff two additional shipments of cosmetics that Plaintiff did not order. (*Id.*, P. 8). Plaintiff marked the products "did not order," and returned them to Meaningful Beauty. (*Id.*).

On or about December 12, 2012, Defendant RJM Acquisitions, LLC ("RJM"), a debt collector, became involved in this matter, when it purchased a Meaningful Beauty Skin Care Products account opened in the name of Donna Wagner from Guthy-Renker LLC ("Guthy"). (ECF No. 29-1, ¶ 5; ECF No. 38, ¶¶ 1, 2). The address provided by Guthy was 1110 Schumacher Road, Fenton, MO, 63026, an address at which Plaintiff has resided for fifteen years. (ECF No. 38, ¶¶ 3, 4).

On February 19, 2013, RJM sent a collection letter to Plaintiff at the Schumacher address. (ECF No. 38, ¶ 5; ECF No. 29-5). When Plaintiff did not respond to the letter[1], RJM sent a second letter on September 4, 2013. (ECF No. 38, ¶¶ 6, 8; ECF No. 29-6). Plaintiff did not respond to the September, 2013, letter either. (ECF No. 38, ¶ 9).[2]

In furtherance of its business RJM utilizes third-party vendors TransUnion and Experian, skip trace services that provide address move updates. (ECF No. 38, ¶ 12). According to RJM, the procedure is as follows: RJM inputs the information that it received from the creditor into TransUnion and Experian; TransUnion and Experian electronically provide RJM with an updated address, if one is found, and the name associated with the updated address; and RJM's database automatically is updated with the new information. (*Id.*, ¶¶ 13, 14). If RJM receives a new address and the "characteristics match," it then sends a collection letter to the new address. (*Id.*, ¶ 15).

On or about September 21, 2013, through TransUnion and/or Experian, RJM obtained the following address for Plaintiff: 1347 W. Lark Industrial Dr., Fenton, MO, 63026. (ECF No. 38, ¶ 16). RJM sent a collection letter to the Lark address on October 22, 2013. (*Id.*, ¶ 17; ECF No. 29-3). As with the two prior letters, this letter was addressed solely to Plaintiff, and bore the notation "Personal and Confidential" on the outside of the envelope. (ECF No. 38, ¶ 18).

According to Plaintiff, the Lark address is her father's business address, and she has never resided or worked at that address. (ECF No. 29-1, ¶¶ 8-10). Plaintiff's father received the letter at the Lark address, opened and read it, and thus learned about the alleged debt. (*Id.*, ¶ 16). Shortly thereafter, Plaintiff's father visited Plaintiff's home with the letter in hand, and asked if Plaintiff was suffering financial difficulties. (*Id.*, ¶ 17). Plaintiff maintains this encounter (and

---

[1] Plaintiff claims she never received the February 19, 2013, collection letter. (ECF No. 38, ¶ 7).
[2] Again, Plaintiff claims she did not receive the September, 2013, letter. (ECF No. 38, ¶ 10).

the fact that RJM had disclosed the debt to her father) caused her great embarrassment, anxiety and stress. (*Id.*, ¶ 18; ECF No. 2, ¶ 12).

On October 30, 2013, Plaintiff called RJM, and informed its representative that the Lark address was one for her father's place of employment. (ECF No. 38, ¶¶ 19, 21).[3] Plaintiff further informed the representative that she did not purchase the products that formed the basis of the debt. (*Id.*, ¶ 22). RJM notated its file that Plaintiff did not owe the debt, and ceased all collection efforts at that time. (*Id.*, ¶¶ 23, 24).

On or about November 6, 2013, Plaintiff filed her Petition for Damages ("Complaint") in the Circuit Court of Jefferson County, Missouri. (ECF No. 2).[4] Plaintiff's Complaint purports to be "an action for statutory and actual damages brought by an individual consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices." (*Id.*, ¶ 1).

As stated above, the parties filed competing Motions for Summary Judgment on December 18, and 19, 2014. (ECF Nos. 29, 31).

<u>**SUMMARY JUDGMENT STANDARD**</u>

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v.*

---

[3] The parties agree this was the first and only time Plaintiff contacted RJM, and that RJM never placed a phone call to Plaintiff. (ECF No. 38, ¶¶ 20, 25).
[4] RJM removed Plaintiff's Complaint to this Court on December 10, 2013, on the basis of federal question jurisdiction. (ECF No. 1).

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

"The FDCPA was designed to protect consumers from the 'abusive, deceptive and unfair debt collection practices' of debt collectors." *Worch v. Wolpoff & Abramson, L.L.P.*, 477 F.Supp.2d 1015, 1018 (E.D. Mo. 2007), citing 15 U.S.C. § 1692 *et seq.* "In order to establish a violation of the FDCPA, a plaintiff must demonstrate that 1) plaintiff has been the object of collection activity arising from a consumer debt; 2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and 3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *O'Connor v. Credit Protection Ass'n LP*, 2013 WL 5340927, at *6 (E.D. Mo. Sep. 23, 2013) (citations omitted); *see also McHugh v. Valarity, LLC*, 2014 WL 6772469, at *2 (E.D. Mo. Dec. 1, 2014). In the instant case, only the third element is at issue. Plaintiff avers RJM's conduct of sending a collection letter to

her father's place of business, which he then opened, violated 15 U.S.C. § 1692c(b), which provides in relevant part as follows:

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

On this basis Plaintiff moves for summary judgment as to liability, leaving only the question of damages to be determined at trial. (*See* ECF No. 29).

In partial response to Plaintiff's motion[5] (and as the basis for its own Motion for Summary Judgment), RJM asserts it may not be held liable because it is protected by the bona fide error defense set forth in 15 U.S.C. § 1692k(c), as follows:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

(*See* ECF No. 35, PP. 5-8). Section 1692k(c) "serves as a complete defense and relieves defendant of liability." *Rogers v. Medicredit, Inc.*, 2013 WL 2403661, at * 2 (E.D. Mo. May 31, 2013) (citations omitted). "To avail itself of this defense, [RJM] must show by a preponderance of the evidence that: (1) the alleged violation was not intentional; (2) the alleged violation resulted from a bona fide error; and (3) [RJM] maintained procedures reasonably adapted to avoid any such error." *Id.*, citing 15 U.S.C. § 1692k(c). With respect to the first element, RJM "must only show that the violation was unintentional, not that the communication itself was unintentional." *Thomas v. Consumer Adjustment Co., Inc.*, 579 F.Supp.2d 1290, 1294 (E.D. Mo.

---

[5] RJM also maintains it did not violate the FDCPA in the first instance. (*See* ECF No. 35, PP. 3-5).

2008) (citation omitted).

Here, RJM asserts the violation was unintentional, as it was unaware the Lark address was anything other than Plaintiff's place of residence until Plaintiff contacted RJM to dispute the debt on October 30, 2013. (ECF No. 35, PP. 5-6). RJM further maintains the violation resulted from a bona fide error, as it believed the debt was real and was entitled to rely on information provided by the creditor in forming said belief, and that it had in place procedures reasonably adapted to avoid the type of violation at issue here. (*Id.*, PP. 6-8).

Upon consideration, the Court finds fact questions remain with respect to whether the alleged violation was intentional, whether it resulted from a bona fide error, and whether RJM had in place procedures reasonably adapted to avoid the alleged error at issue here. *See Rogers*, 2013 WL 2403661, at * 2; *Worch*, 477 F.Supp.2d at 1020. Under these circumstances, RJM's Motion for Summary Judgment must be denied.[6]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 29) is **DENIED**.

---

[6] Plaintiff's Motion for Partial Summary Judgment on liability must be denied as well, as RJM may not be held liable should it ultimately prevail on its bona fide error defense. *See* 15 U.S.C. § 1692k(c).

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 31) is **DENIED**.

Dated this 19th Day of February, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE