UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

DONNA WAGNER, )
)
    Plaintiff, )  No. 13-2466
)
v. )
)
RJM ACQUISITIONS, LLC. )
)            Jefferson County
    Defendant. )       Case No. 13JE AC04975
)

## DEFENDANT'S TRIAL BRIEF

Pursuant to this Court's Case Management Order – Track 2: Standard, Defendant RJM ACQUISITIONS, LLC hereby submits the following Trial Brief:

**I.    INTRODUCTION**

Plaintiff alleges that RJM violated 15 U.S.C. § 1692, et seq., Fair Debt Collection Practices Act ("FDCPA"), during RJM's attempts to collect a Meaningful Beauty Skin Care Products debt ("debt") that Plaintiff allegedly did not owe. Specifically, Plaintiff alleges RJM engaged in third party communication in order to harass her into paying the debt, by sending a collection letter addressed to her, but inexplicably opened by her father. After the letter was opened by her father, Plaintiff called RJM, and recorded the telephone call, without telling RJM that she was recording it. She disputed the debt. Once she disputed the debt, RJM indicated they would never contact her again, and they did not.

The address to which the letter was sent was a business named "Midwest Epoxy Resurfacing LLC." Plaintiff's father, and sister and brother, and then husband were all part owners of that

business, *as was plaintiff herself*.[1] RJM contends that it did not violate the FDCPA because the letter was specifically addressed to Plaintiff at a business in which she has an ownership interest. The letter was notated "personal and confidential." RJM contends that Plaintiff's father violated federal law 18 U.S.C. § 1702 by opening the letter that was not address to him. Furthermore, RJM could not anticipate that someone other than Plaintiff would open the letter addressed to Plaintiff. If RJM is determined to have violated the FDCPA, RJM contends that it is protected by the bona fide error defense because the violation was not intentional; it resulted from a bona fide error; and RJM maintained procedures reasonably adapted to avoid the violation.

## II. **RELEVANT FACTS**

The debt was purchased by RJM from Guthy-Renker L.1C ("Guthy") on December 12, 2012. The address provided by Guthy was 1110 Schumacher Rd, Fenton, MO 63026 ("Schumacher Address"). On February 19, 2013, RJM sent a collection letter to Donna Wagner at the Schumacher Address. Plaintiff did not respond to this collection letter. On September 4, 2013, RJM sent Plaintiff another letter to the Schumacher Address. Plaintiff, once again, did not respond.

On September 21, 2013, using a skip trace service provided by both TransUnion and Experian, RJM obtained the following address for Plaintiff: 1347 W. Lark Industrial Dr., Fenton, MO 63026 ("Lark Address"). On October 22, 2013, RJM sent a collection letter to the Lark Address. Like all of the letters RJM sent Plaintiff, the letter sent to the Lark Address bore the notation "Personal and Confidential" on the outside of the envelope and bore no indication that the letter was an attempt to collect a debt.

---

[1] Deposition Transcript of Plaintiff, 18:7-19:10; 25:10-24.

On October 30, 2013, Plaintiff called RJM in response to the October 22, 2013 collection letter. This was the first and only time Plaintiff contacted RJM. Plaintiff informed RJM that the Lark Address was not her residential address. During the phone call (which she recorded without informing RJM), she claimed the Lark Address was her "father's work." In actuality, however, plaintiff is an owner of the business. **Plaintiff admitted during her deposition that she is a part owner of the business – Midwest Epoxy Resurfacing - along with her brother, sister, and her husband.** Plaintiff informed the RJM representative during the call that she did not purchase the products that were the basis of the debt. This was the first time RJM was advised by anyone that Plaintiff did not own the debt. Immediately after speaking with Plaintiff, RJM notated the file and ceased all collection efforts.

### III. PLAINTIFF'S ALLEGATION

Plaintiff alleges that RJM violated 15 U.S.C. § 1692c(b) of the FDCPA during RJM's attempts to collect a debt from Plaintiff that she claims she did not owe. Specifically, Plaintiff alleges RJM engaged in third party communication by sending her a letter which was addressed to her, but opened by her father.

Section 1692c(b) provides:

> (b) Communication with third parties. Except as provided in section 804 [15 USCS § 1692b], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Plaintiff also alleges that RJM violated 15 U.S.C. 1692(d) which provides that "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) [604(a)(3)] of this Act [15 USCS § 1681a(f) or 1681b(a)(3)].
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 804 [15 USCS § 1692b], the placement of telephone calls without meaningful disclosure of the caller's identity."

### IV. PLAINTIFF'S FATHER COMMITTED A FEDERAL OFFENSE WHEN HE OPENED A LETTER THAT WAS NOT ADDRESSED TO HIM

RJM contends that Plaintiff's father violated federal criminal law 18 U.S.C. § 1702 by opening the letter that was not address to him. Section 1702 provides:

> Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or

secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined under this title or imprisoned not more than five years, or both.

## V. RJM DID NOT VIOLATE THE FDCPA

### A. Because RJM Never Contacted Plaintiff Via Telephone In An Attempt To Collect The Debt And RJM Ceased All Further Collection Efforts After Plaintiff Disputed The Debt, RJM Did Not Violate 15 U.S.C. § 1692(d)

Here, Plaintiff alleges that RJM's collection efforts included phone calls and a debt collection letter sent to her father. Plaintiff further alleges that RJM attempted to bully and embarrass Plaintiff by sending the letter to a business in which she had an ownership interest, even after she had disputed the debt.

RJM did not harass, oppress, or abuse Plaintiff in connection with the collection of the debt at issue for multiple reasons. First, RJM merely sent collection letters with the proper validation notice to an address that was provided by Guthy, the original creditor, which, in fact, was, and is Plaintiff's residence, and to an address that RJM obtained from TransUnion and Experian, skip trace providers. Second, RJM did not contact Plaintiff by telephone. In fact, RJM does not place outbound calls to debtors in an attempt to collect a debt. Third, the Lark Address belongs to a business (Midwest Epoxy Resurfacing) in which Plaintiff has an ownership interest. RJM obtained the Lark Address from a skip trace provider it utilizes. RJM utilizes skip trace providers in order to ensure that a debtor actually receives notice of its collection efforts. Fourth, RJM's letter was addressed to Donna Wagner and the envelope clearly stated "PERSONAL & CONFIDENTIAL." Lastly, when Plaintiff disputed the debt with RJM for the first time on October 30, 2013, RJM immediately ceased its collection efforts on the same day.

Accordingly, RJM cannot be held liable for violating any provision of the FDCPA.

**B. RJM did Not Violate 15 USC § 1692c(b) Because Plaintiff Herself Maintains An Ownership Interest In The Business At The Lark Address, And RJM Could Not Anticipate That Someone Other Than Plaintiff Would Open The Letter Addressed To Her**

Here, Plaintiff alleges that RJM sent a collection letter to a third party without her consent. However, Plaintiff admitted during her deposition that she is a part owner of the business to which RJM addressed the letter. As stated above, RJM obtained the Lark Address via TransUnion and Experian, skip trace providers, it utilizes in order to ensure the debtors received the proper notice.

The collection letter that was sent to Plaintiff at a business that she partly owns and specifically addressed to "Donna Wagner". The envelope was clearly marked "PERSONAL & CONFIDENTIAL." RJM could not anticipate that Plaintiff's father would commit a federal offense by opening a letter addressed not addressed to him, but rather to his daughter. Accordingly, RJM did not violate 15 USC § 1692c(b).

**C. A Least Sophisticated Consumer Would Not Have Been Misled By RJM's Alleged Misrepresentations**

Courts are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response. *Campbell v. Credit Prot. Ass'n, L.P.*, 2013 U.S. Dist. LEXIS 45004 (E.D. Mo. Mar. 27, 2013) When evaluating whether the statement of a debt collector is "false, deceptive, or misleading," courts consider the effect it would have on the listener or recipient. See *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012); *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Or. 2002). In *Peters*, the court viewed a letter

"through the eyes of an unsophisticated consumer" to evaluate whether it was misleading when the consumer was the intended recipient of the letter. *Peters*, 277 F.3d at 1055. Even a literally false statement does not violate § 1692e if it would not mislead the recipient. *Id.* at 1056.

Here, Plaintiff alleges RJM violated 15 U.S.C § 1692e by allegedly attempting to collect a debt which was not owed by Plaintiff. Plaintiff admits that she had opened an account with Meaningful Beauty Skin Care Products, but claims that she did not purchase the products that were the basis of the debt. However, Plaintiff never disputed the debt with RJM until October 30, 2013. As stated above, Plaintiff did not respond to either the first or second collection letter which were sent to the Schumacher Address[2], and she first contacted RJM on October 30, 2013, the same day RJM ceased collections on the debt.

Moreover, Plaintiff has testified that she did not receive the first two letters that were sent to the Schumacher Address. Nevertheless, all the letters sent to Plaintiff clearly stated:

> Unless you notify this office within 30 days after receiving this notice
> that you dispute the validity of this debt or any portion thereof, this
> office will assume this debt is valid.

A least sophisticated consumer would have been able to read this language and determine that he or she simply had to call and inform the collection agency that he or she is not the debtor. In fact, the collection letter did not mislead Plaintiff. Plaintiff testified that upon receiving the collection letter, she called RJM on October 30, 2013 and informed the representative that she did not owe the debt. The same day RJM ceased all collection efforts.

---

[2] Plaintiff has admitted that the Schumacher Address was in fact the correct address.

Moreover, if merely sending a letter to a person who claims she is not the debtor is a violation of the FDCPA, then there would be no reason for verification. It would also invite consumers to file lawsuits, instead of simply disputing the debt.

## VI. RJM IS PROTECTED BY THE BONA FIDE ERROR DEFENSE

RJM contends that it did not violate the FDCPA because the letter was specifically addressed to Plaintiff, and not her father, and RJM could not anticipate that someone other than Plaintiff would open the letter addressed to Plaintiff. However, if there was a violation of the FDCPA, RJM contends that it is protected by the bona fide error defense because the violation was not intentional; it resulted from a bona fide error; and RJM maintained procedures reasonably adapted to avoid the violation.

15 U.S.C § 1692k provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error.

15 U.S.C. § 1692k(c).

Section 1692k(c) "serves as a complete defense and relieves defendant of liability." *Rogers v. Medicredit, Inc.*, 2013 U.S. Dist. LEXIS 76586, at 5 (E.D. Mo. May 31, 2013) (citations omitted).

A. **The Violation Was Not Intentional**

The violation in this case, attempting to collect a debt from Plaintiff which she alleges she did not accrue, was not intentional. Plaintiff has not provided any evidence to prove otherwise. Here, RJM purchased the account from Guthy. The address provided by Guthy was 1110 Schumacher Rd, Fenton, MO 63026 ("Schumacher Address"). Knowing that the address that it initially receives from the creditor may no longer be valid and the fact that Plaintiff did not respond to either of the collection letters sent to the Schumacher Address, RJM utilized a skip trace vendor in hopes of obtaining a more recent address.

On September 21, 2013, RJM via TransUnion and Experian, skip trace providers, received the following address for Plaintiff: 1347 W. Lark Industrial Dr., Fenton, MO 63026 ("Lark Address"). On October 22, 2013, RJM sent a collection letter to the Lark Address. On October 30, 2013, Plaintiff called RJM in response to October 22, 2013 collection letter. This was the first time that Plaintiff had contacted RJM. Plaintiff informed RJM that the Lark Address was her "father's work." However, the Lark address was a business address and Plaintiff had an ownership interest in the business. On October 30, 2013, RJM ceased all collection efforts. The fact that RJM ceased sending further notices after Plaintiff first disputed the debt demonstrates that RJM's actions were not intentional.

B. **The Violation Resulted from a Bona Fide Error**

A misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client qualifies as a bona fide error under 15 U.S.C. § 1692k(c). (See *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (holding the defendant reasonably relied on its client's calculation of the debt owed, and that the resulting misrepresentation in a subsequent communication was *a* bona fide error pursuant to 15 U.S.C. §

1692k(c).) The FDCPA does not require debt collectors to conduct an independent investigation into the validity of the underlying claim prior to commencing collection activities and, when collecting on accounts, a debt collector may rely on information the creditor-client provides. (See *Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1177 (9th Or. 2006); *Jenkins v. Heintz*, 124 F.3d 824, 833-34 (7th Cir. 1997); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992).)

The facts of this case demonstrate that the debt was valid. RJM was provided an address by Guthy. However, Guthy failed to inform RJM that Plaintiff returned the items that were the basis of the debt. In fact, October 30, 2013, was the first time that Plaintiff contacted RJM to dispute the debt. October 30, 2013 was also the day that RJM ceased all its collection efforts regarding the underlying debt.

RJM utilized the skip trace service in order to ensure that the debtor received the proper notice. Utilizing these programs is the only way that RJM can ensure that a potential debtor receives the proper notice. Accordingly, the alleged violation resulted from a bona fide error.

### C. RJM Maintained Procedures Reasonably Adapted To Avoid The Violation

Finally, RJM is required to establish that it had procedures reasonably adapted to avoid the violation. In fact, the procedures that support a valid bona fide error defense must be "'reasonably adapted' to avoid the specific error at issue." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Or. 2008).

When RJM purchases an account it is provided with certain information from the creditor. Here, RJM was provided a name and an address. RJM is fully aware that the address that it initially receives from the creditor may no longer be valid, as the debtor may no longer

reside at the same address he or she did when they first opened the account in question. In order to ensure that potential debtors receive the proper notice, RJM utilizes a skip trace vendor, that provides address move updates. RJM initially inputs the information that it receives from the creditor into the skip trace service. The skip trace vendor will then provide RJM with an updated address and the name associated with the updated address. This information is electronically transmitted to RJM, and RJM's database is then automatically updated. If the characteristics matched and the address provided was a newer address, RJM would then send a collection letter to the newer address. Utilizing these programs is the only way that RJM can ensure that a potential debtor receives the proper notice.

RJM followed the above procedures. Accordingly, RJM is protected by the bona fide error defense as set forth in 15 U.S.C. § 1692k(c).

**VII.** **CONCLUSION**

RJM deserves to have judgment entered in its favor because it did not violate the FDCPA. However, if there was a violation of the FDCPA, RJM contends that it is protected by the bona fide error defense because the violation was not intentional; it resulted from a bona fide error; and RJM maintained procedures reasonably adapted to avoid the violation.

Respectfully Submitted,

RJM ACQUISITIONS, LLC, Defendant

By: /s/ James L. Craney
LEWIS BRISBOIS BISGAARD & SMITH LLP
James L. Craney, #53365

LEWIS BRISBOIS BISGAARD & SMITH LLP
Mark Twain Plaza II
103 West Vandalia St.
Suite 300
Edwardsville, IL 62025
618-307-7290 – Telephone
618-692-6099 – Fax

## PROOF OF SERVICE

The undersigned certifies that on **March 17, 2015** the foregoing was served by operation of the Court's electronic filing system on all counsel of record.

<pre>                               /s/ James L. Craney           
                          LEWIS BRISBOIS BISGAARD & SMITH LLP</pre>