IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DONNA WAGNER** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13-cv-02466-JCH |
| ) | |
| **RJM ACQUISITIONS, LLC** ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S TRIAL BRIEF

*INTRODUCTION*

**1. Summary of the Evidence Plaintiff Expects to Show**

Plaintiff contracted and paid for an order of cosmetics from "Meaningful Beauty." Subsequently, Meaningful Beauty mailed her for two additional shipments of cosmetics that Plaintiff did not order. Plaintiff mailed the cosmetics back to Meaningful Beauty and immediately disputed that she owed anything for the un-ordered cosmetics. Meaningful Beauty told Plaintiff that the matter was resolved. Years passed, and, unbeknownst to Plaintiff, Defendant RJM bought a "debt" that Plaintiff supposedly owed to Meaningful Beauty arising out of the two un-ordered cosmetic shipments. RJM has never been able to produce the agreement, any account statements, or anything at all from Meaningful Beauty that substantiates the supposed debt between Plaintiff and Meaningful Beauty. This is because the debt is non-existent.

Plaintiff heard nothing from RJM until RJM sent a collection letter to her father's workplace in October of 2013. Plaintiff is a 1% owner in this family business, but does not work for the business and has never received any mail at her father's business address prior to this incident. The business address is not Plaintiff's address. RJM has always been in possession of

Plaintiff's actual residence address and had no need to send a collection letter to this address. RJM sent (but Plaintiff did not receive) two collection letters to this address and did not receive any return mail.  After the first two letters, RJM grew frustrated that Plaintiff was not paying the debt.  RJM ran a "skip trace" on Plaintiff and located the address of her father's place of employment.  The documents that RJM has produced in this case from skip-trace vendor "Lexis Nexis" show that that this address was shared by many people- it is obviously not a residence address.  Plaintiff had never used this address for any purpose, and she never provided it to anyone as her address.  Nonetheless, RJM sent a collection letter to Plaintiff's father's place of employment where the letter was routed Plaintiff's father.  When Plaintiff confronted RJM about this, RJM lied to Plaintiff and told Plaintiff over the telephone that Plaintiff's *original creditor* (and not a third party skip trace service) had provided the address to RJM.

Plaintiff's father opened the letter and learned that Plaintiff was apparently in financial distress because Plaintiff could not even pay for her cosmetics.  Plaintiff's father then visited Plaintiff's home and inquired about her financial difficulties.  This caused Plaintiff embarrassment.  RJM's decision to "take a chance" on sending the letter to Plaintiff's father's workplace runs afoul of the strict liability scheme set forth in the FDCPA as set forth below.  In addition, RJM endeavored to collect a debt from Plaintiff that Plaintiff plainly does not owe. This is an independent violation of the FDCPA as set forth below.

   2. **What Plaintiff Expects to Achieve**

Plaintiff will ask the jury to return a verdict in her favor with respect to each of her FDCPA claims under 15 U.S.C. § 1692b-f.  Plaintiff will ask the jury for $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k.  Plaintiff will ask the Court to award reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k.  Plaintiff will ask the jury for an actual damages

award that balances the scales for the harm she suffered in the form of stress, anxiety and frustration.

## SUMMARY AND ANALYSIS OF APPLICABLE LAW

**1. The "Unsophisticated Consumer" Standard and Strict Liability**

The FDCPA is a strict liability statute, and a consumer need not show intentional conduct by the debt collector to establish a violation. Mayhall v. Berman & Rabin, P.A., 2014 WL 340215, at *4 (E.D.Mo. Jan 30, 2014).

The jury must use the "unsophisticated consumer" to measure Plaintiff's claims against Defendant. The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692. The actions of a debt collector are evaluated under the "unsophisticated consumer" standard, an objective test designed to protect consumers of "below average sophistication or intelligence." Strand v. Diversified Collection Service, Inc., 380 F.3d 316, 317-18 (8th Cir. 2004). Under the "unsophisticated consumer" standard, judgment can be entered when collection activity "on its face violates the FDCPA… even in the absence of extrinsic evidence." Bode v. Encore Receivables Mgmt., Inc., 2007 WL 2493898, at *4 (E.D. Wis. Aug. 30, 2007).

**2. Plaintiff's Burden of Proof**

Plaintiff must establish the following to prevail on his claims: (1) she is a consumer, (2) Defendant is a debt collector, (3) there was an attempt to collect a debt, and (4) Defendant violated, by act or omission, a provision of the FDCPA. See Creighton v. Emporia Credit Serv., Inc., 981 F. Supp. 411, 414 (E.D. Va. 1997); Isaacson v. Saba Commercial Servs. Corp., 636 F. Supp. 2d 722, 724 (N.D. Ill. 2009).

The first three elements are not in dispute. Plaintiff is a consumer, Defendant is a debt collector, and there was an attempt to collect a debt. Below, Plaintiff will demonstrate that Defendant violated each of 15 U.S.C. §§ 1692b-f.

3. **Defendant violated 15 U.S.C. § 1692b**

Pursuant to 15 U.S.C. § 1692b, a debt collector can only communicate with a third party for the purpose of acquiring location information about the consumer, and the Act prohibits a debt collector from revealing to a source of location information that the consumer owes a debt. 15 U.S.C. § 1692b(1)(2); Thomas v. Consumer Adjustment Co., Inc., 579 F.Supp.2d 1290, 1294 (E.D. Mo. 2008). The Act narrowly defines "location information" as the consumer's place of abode, her home telephone number, or her place of employment. Id. It is uncontroverted that Defendant obtained Plaintiff's father's work address from a third party skip-trace vendor, and that Defendant made no effort to restrict the vendor to search for "location information" allowed by the Act. Defendant has therefore violated 15 U.S.C. § 1692b.

For example, in Thomas, Judge Fleissig found that the debt collector violated § 1692b when it sought "a better number to reach the debtor real quick" as opposed to a place of abode, home telephone number, or place of employment. Id, at 1297. In the instant case, Defendant violated § 1692b in similar fashion. Defendant made third party contacts with skip-trace companies to acquire generic "location information" for Plaintiff that related to Midwest Epoxy, her family business. The evidence will be that Defendant sought *any known location* where Plaintiff might receive mail. Defendant took no steps to tailor its search to acquire information about Plaintiff's abode, home telephone number, or place of employment. Although Plaintiff has a 1% ownership interest in the company, there is no question that Midwest Epoxy is not

4

Plaintiff's abode or her place of employment.  Thus, Defendant sought illicit location information from the skip-trace companies and thereby violated § 1692b.

In addition, Defendant violated §1692b because it revealed the existence of the debt to Plaintiff's father.  If Defendant claims it was simply trying to locate Plaintiff by sending the collection letter to her father's place of business, then Defendant is prohibited from disclosing the debt to Plaintiff's father.  15 U.S.C. § 1692b(2).  However, in mailing the collection letter to Plaintiff's father, this is precisely what Defendant did.  Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1025-26 (9th Cir. 2012).

**4.  Defendant violated 15 U.S.C. § 1692c**

It is undisputed that Defendant sent collection correspondence to Plaintiff's father's place of business.  Section 1692c(b) prohibits a debt collector from engaging in collection communications with third parties: "A debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer…"  15 U.S.C. § 1692c(b); Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1025-26 (9th Cir. 2012); Thomas v. Consumer Adjustment Co., Inc., 579 F.Supp.2d 1290, 1296-1297 (E.D.Mo. 2008).

It is undisputed that RJM was provided Plaintiff's true and correct residence address by Plaintiff's original creditor.  It is undisputed that RJM used this address to send Plaintiff at least two collection letters.  It is undisputed that RJM never received any returned mail from this address.  RJM was also in possession of Plaintiff's telephone number.  It is undisputed that RJM thereafter obtained Plaintiff's father's business address from a third-party vendor.  It is undisputed that RJM mailed a collection letter referencing Plaintiff's debt to Plaintiff's father's business address.  Plaintiff's father opened the letter and learned about the debt; this caused Plaintiff great embarrassment.

5

Evon is on point and demonstrates the propriety of judgment in Plaintiff's favor. In that case, the debt collector sent a collection letter to the consumer's workplace. Evon, 688 F.3d at 1019. The letter bore the consumer's name and was marked "personal and confidential." Id. The letter was sent "in care of" the consumer's employer. Id. The consumer's employer opened and read the letter, which disclosed that the consumer owed a debt. Id. The district court ruled that this practice did not violate 15 U.S.C. 1692c(b). Id, at 1021.

The Ninth Circuit Court of Appeals reversed the district court: "Given this court's recognition that the FDCPA is a remedial statute which should be interpreted "liberally," [the collector's] act manifestly constitutes a violation. [The collector] knew or could reasonably anticipate that a letter sent to a [consumer's] employer might be opened and read by someone other than the debtor…" Id, at 1025 (internal citations omitted).

The Court recognized the FTC's interpretation of § 1692c(b) as valid: "A debt collector may not send a written message that is easily accessible to third parties." Id. The Court also noted, "[The collector] conceded that he *had* [the consumer's] home address. He just didn't want to use it…" Id, at 1026.

Evon is closely analogous to the instant case because Defendant (1) had Plaintiff's residence address; (2) had no consent to send to mail to Plaintiff at her father's place of business, and (3) did so anyway. The collection letter was "easily accessible to third parties" because it was sent to Plaintiff's father's place of business. Id. In Evon, the consumer at least had some connection with the address the collector used to send the letter because the collector sent the letter to the consumer's workplace. In the instant, case, Plaintiff had no connection to the address Defendant used; Plaintiff did not provide this address to Defendant or to her original creditor, and Defendant has no excuse for sending its collection letter to Plaintiff's father's place

6

of business. Defendant obtained this address via skip trace. In choosing the send the collection letter to Plaintiff's father's workplace rather than to Plaintiff at her residence, Defendant, like the debt collector in Evon, "took a chance that his conduct would run afoul of the Act." Id. Defendant's decision to contact Plaintiff through her father's place of business was completely unnecessary and violated § 1692c(b).

5. **Defendant violated 15 U.S.C. § 1692d**

Section 1692d prohibits any debt collector conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d; Terry v. C&D Complete Business Solutions, 2011 WL 144920 (W.D. Mo. Jan. 18, 2011). In this case, Defendant became frustrated when Plaintiff did not respond to its two initial letters. Defendant retaliated by "skip tracing" Plaintiff to her father's workplace and sending a collection letter to that address in order to bully and embarrass Plaintiff. Complaint, ¶16. Defendant, at the time it sent the letter, (1) knew that it possessed a valid address for Plaintiff because it had not received any return mail from that return address and (2) decided to gamble on a "new" address anyway. The "natural consequence" of disclosing Plaintiff's debt to a third party (her father) was to harass Plaintiff into paying the debt. Defendant also violated §1692d when it attempted to collect a non-existent debt from Plaintiff because the only outcome of such an endeavor would be to harass and oppress Plaintiff. Thus, Defendant has run afoul of 15 U.S.C. § 1692d.

6. **Defendant violated 15 U.S.C. § 1692e.**

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Defendant utilized many false, deceptive and misleading misrepresentations in connection with the collection of the subject debt. First, it is undisputed that Defendant told Plaintiff over the telephone that her

7

father's business address "was on the account when we got it from meaningful beauty." (Recording submitted as part of Plaintiff's Trial Exhibit List.) This was a lie. Defendant conceded via the deposition of its Rule 30(b)(6) witness it did not get the address from Meaningful Beauty; it obtained the address from a third party skip trace provider.

Furthermore, Defendant falsely represented the amount of debt to Plaintiff in the challenged collection letter. Plaintiff did not owe a debt. "One type of misrepresentation prohibited by § 1692e(2)(A) is the false representation that a debt exists." Yarney v. Ocwen Loan Servicing, LLC, 929 F. Supp. 2d 569, 576 (W.D. Va. 2013). Subsection 1692e(2)(A) proscribes "[t]he false representation of the character, amount, or legal status of any debt." Id. § 1692e(2)(A); Eckert v. LVNV Funding, LLC, 647 F.Supp.2d 1096, 1104 (E.D. Mo. 2009); Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1035-36 (D. Minn. 2010). Defendant represented to Plaintiff that she owed more than one hundred dollars; there is no question Plaintiff does not owe this amount, and Defendant has therefore violated § 1692e. For example, in Eckert, Judge Weber ruled that that a cognizable § 1692e claim existed where the debt collector did not credit a consumer's payment to the debt amount the collector was seeking. Id. Similarly, Defendant in the instant case has failed to credit Plaintiff with the products that she returned- this should have eliminated the debt. Instead, Defendant is pursuing Plaintiff for an amount that she does not owe and thereby is in violation of § 1692e.

7. **Defendant violated 15 U.S.C. § 1692f.**

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." As set forth above, Defendant engaged in "unfair means" when it attempted to bully and embarrass Plaintiff by sending the collection letter to her father's workplace.

In addition, Defendant has violated subsection (1) of section 1692f. Section 1692f(1) prohibits a debt collector from collecting any amount from a consumer "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f. Accordingly, a debt collector violates the FDCPA when it attempts to collect a debt without possessing any evidence that the amount it is attempting to collect is actually. *See, e.g.*, Prince v. LVNV Funding, LLC, No. 2:13-CV-462-WKW, 2014 WL 3361912, at *8 (M.D. Ala. July 9, 2014) (denying LVNV's motion to dismiss plaintiff's claims brought under Section 1692f that "LVNV lacks evidence of [plaintiff's] agreement creating the debt, and thereby supporting the amount she allegedly owes."). While a debt collector who is simply collecting the debt may reasonably rely on its *client's* representations regarding the debt, in this case, Defendant was its own client- it purchased the debt. Accordingly, it possessed an independent duty to ensure the amount it attempted to collect was expressly authorized by the agreement creating the debt as opposed to blindly relying on representations made by the original creditor or other assignees multiple steps removed from the agreement. *See* Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1275 (11th Cir. 2011) ("A debt collector does not fulfill this affirmative obligation by delegating it entirely to [third parties] whose actions are not even regulated by the FDCPA."). Defendants have been unable to produce *any* document that expressly authorizes the collection of Plaintiff's alleged debt, much less at the exact amount Defendants demanded. Accordingly, Defendant has violated 15 U.S.C. § 1692f.

8. **Analysis of Defendant's Bona Fide Error Defense**

> *"Let me just augment my last response. There is no error in this case."* Scott Matte, 44:11-12.
>
> *"We don't believe we committed any error."* Scott Matte, 45:15-16.

> *"No, there were no errors done in this case.  I can't have procedures to avoid something that is not an error."*  Scott Matte 46:3-5.
>
> *"I think as I said before, we don't believe any error was made here."*  Scott Matte 55:5-6.
>
> *"Well, you are asking me a question about errors made in this case.  I can't answer that question because we didn't make an error in this case."*  Scott Matte, 55:8-11.

In light of this testimony, it is a farce that Defendant is going to try and claim "bona fide error" as an affirmative defense in this case.  Defendant has the burden of asserting and proving their own affirmative defenses, including the bona fide error defense.  Wilhelm v. Credico, Inc., 519 F.3d 416, 420 (8th Cir. 2008).  Defendants maintain this burden throughout the litigation, including at trial.  No reasonable jury should conclude that either Defendants' bona fide error defense is viable.

As this Judge Autrey recently stated the rule in a case analogous to the instant one, "[t]o qualify for the bona fide error defense, a debt collector must show: (1) the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error."  Ploch v. Client Services, Inc., No. 4:12CV0518-HEA *7 (E.D. Mo. Apr. 4, 2013).

The Ploch case is instructive here.  Ploch, decided by Judge Autrey on April 1, 2013, involved a collector who contacted the consumer after the collector knew the consumer was represented by counsel.  The collector, after being sued by the consumer and thereby learning that the consumer had retained counsel on the debt, initiated a post-suit collection campaign

directed at the consumer for the same debt that was the subject of the lawsuit. The collection activity included frequent calls to Plaintiff.

The collector, just like the current Defendant, attempted to hide behind a conclusory allegation of bona fide error. The collector stated simply that it did not intend to contact the consumer again and that it had procedures adapted to avoid the error. The collector used the affidavit of its Chief Information Officer, Edward Little, to explain its procedures.

In response to the bona fide error defense, the consumer noted that although the collector made a self-serving, conclusory statement that its conduct was unintentional, the collector admitted that it had notice of the consumer's representation and nevertheless called and sent letters. Further, the collector had presented no evidence that the error was genuine ("bona fide") – the collector's statement that it did not intend to make the error had no bearing on whether the error was genuine. Finally, the consumer argued that the collector had failed to explain what its "procedures" were, in what manner those procedures were "reasonably adapted" to avoid the error, and any facts at all to explain how the error occurred in that specific case.

Judge Autrey was not fooled by the collector's conclusory assertion of the bona fide error defense. He rejected the collector's bona fide error argument and granted summary judgment for the consumer. Opinion, Memorandum and Order at 8, Ploch v. Client Services, Inc. This Court honed in on what the collector in that case, and the Defendant in our case, failed to do:

> [The collector] failed to offer any specific facts detailing how or why the multiple correspondences were unintentional. Instead, Defendant merely offers self-serving, conclusory statements that the correspondences were unintentional without explaining any facts that caused the multiple calls and letter.

Id. at 7–8. This Court found that this failure prevented the collector from establishing even the first element of the bona fide error defense. Id. at 8.

11

Defendant has failed to create a jury issue for any of the three elements of the bona fide error defense.

### i. Defendant has not presented evidence sufficient to find that any of its collection activity against Plaintiff was unintentional.

Defendants intended to collect the amount listed on the collection letter. Defendants intended to send the collection letter to Plaintiff's father's workplace. There is absolutely no testimony or evidence to the contrary.

### ii. Defendant has not presented any evidence that its error was bona fide.

Defendant's 30(b)(6) witness destroyed any chance at the bona fide error defense by proclaiming, again and again, that Defendant made no errors whatsoever in this case.

### iii. Defendant has not explained how its procedures were reasonably adapted to avoid the noncompliance that occurred in this case.

Defendant has failed to show that they have adapted any procedures reasonably adapted to prevent their violations of § 1692b (third party contact and obtaining location information for a non-approved debtor location), § 1692c (revealing the debt to a third party), § 1692d (harassment), §1692e (making misleading representations such as the work address coming from Plaintiff's original creditor), or §1692f (unfair practices and collecting on a debt not supported by any evidence).

Defendant has produced a "compliance guide" but Defendant has failed to show how any procedures that might be contained in that guide were adapted to prevent the misconduct described above. The Bacelli court clarified this element's requirements:

> [T]he required procedures must be reasonably adapted to avoid the specific error at issue. Johnson, 443 F.3d at 729. Moreover, "the procedures ... must be explained, along with the manner in which they were adapted to avoid the error." Reichert v. Nat'l Credit Sys.,

> Inc., 531 F.3d 1002, 1007 (9th Cir.2008). ***A conclusory declaration that the debt collector maintained procedures to avoid error is insufficient***. Id.

Bacelli v. MFP, Inc., 729 F.Supp.2d 1328, 1333 (M.D. Fla. 2010) (emphasis added). Courts have granted summary judgment against collectors on their claim of bona fide error even with extensive evidence of error-prevention procedures, when the collector fails to show that the procedures were reasonably adapted to avoid the specific error at issue. See Reichert v. National Credit Systems, Inc., 531 F.3d 1002, 1006–07 (9th Cir. 2008); Dragon v I.C. System, Inc., 483 F.Supp.2d 198 , 205–06 (D. Conn. 2007); Goins v. JBC & Associates, P.C., 352 F.Supp.2d 262, 273–74 (D. Conn. 2005); Isham v. Gurstel, Staloch & Chargo, P.A., 738 F.Supp.2d 986, 999–1000 (D. Ariz. 2010).

Accordingly, Defendant should not get the benefit of the "bona fide error" affirmative defense in this case.

Respectfully submitted,

VOYTAS & COMPANY, LLC

/s/ Richard A. Voytas, Jr.

RICHARD A. VOYTAS, JR., #52046MO
1 North Taylor Ave.
St. Louis, Missouri 63108
Phone: (314) 932-1068
rickvoytas@gmail.com

13

**Certificate of Service**

The below signature certifies that on March 17, 2015 the foregoing was served by operation of the Court's electronic filing system on the following counsel of record:

LEWIS BRISBOIS BISGAARD & SMITH LLP

James L. Craney
Mark Twain Plaza II – Suite 300
103 W. Vandalia Street
Edwardsville, Illinois 62025
(618) 307-7290

___/s/ Richard A. Voytas, Jr.